The remaining matters contained in the motion have been discussed in the original opinion, to which ruling we still adhere.

The motion is overruled.

**WEATHERHEAD et al. v. VAVITHIS.**

No. 3557.

Court of Civil Appeals of Texas. Beaumont.

Dec. 1, 1939.

Rehearing Denied Jan. 1, 1940.

Battaile & Burr, of Houston, for plaintiffs in error.

S. C. Lipscomb and A. D. Lipscomb, both of Beaumont, for defendant in error.

WALKER, Chief Justice.

On the 11th day of July, 1937, appellee, Savas Vavithis, riding as a passenger in a taxicab owned and operated by appellants, E. F. Weatherhead and J. O. Baggett, was injured in a collision in the City of Beaumont between appellants' taxicab and an automobile owned and operated by a third party. This suit was filed by appellee against appellants for damages for the injuries suffered by him in the collision. Appellants have duly prosecuted their appeal to this court from the judgment on the verdict of the jury for the $1,500, entered against them in favor of appellee.

We overrule appellants' assignments that the evidence did raise and was insufficient to support the jury's finding on the issue of the reasonable present cash value of appellee's diminished earning capacity, which resulted from his injury. The following statement supports the jury's verdict on this issue: Plaintiff is a Greek manual laborer, forty-three years of age, with no prospect shown for any other class of employment. For nine years he has been employed by one company as a pump man on an American tanker. He has his domicile in the State of New York. The pumps which he operates are down in the hold of the vessel forty feet below deck, and his job requires hourly trips up and down the forty-foot perpendicular on the ladders between deck and hold. He must operate the pumps and valves in the hold, and care for and operate the pipes and machinery and valves on deck, requiring hard physical labor with freedom of muscular activity in his arms, both for pushing and pulling. He received his injury due to the fault of defendants, July 11, 1937. The trial was had in October, 1938. At that time he was still suffering weakness, inconvenience in performance of his work, and some pain from the injury, according to his own testimony. He had recovered use of the muscles used in pulling, but still had disability, weakness and pain in pushing, not being able to exert the power in pushing a valve, or in any other kind of work involving pushing with his arm on the injured side, that he had before the injury. He had earned in the past $110 a month, with food and lodging on the vessel and an allowance of $3.25 a day for expenses ashore while the vessel was tied up. He plead his earnings, with these incidentals, as the equivalent of $150 a month.

After his injury, and after about nine years of service with the same company, his pay was increased $5 a month. There was medical testimony to the effect that his restoration should have been complete within one year from the date of the injury. But Dr. English testified that appellee might, until the bone gets set, "say six or eight months or a year," have to favor that arm, and that "of course he might have a little neuritis following," "an inflammatory condition of the nerve, the callous thrown out on the nerve"; that it would be hard to say how long it would cause pain and discomfort, depending on whether appellee had any nerve involved in the callous formation on the bone. Appellee testified:

"And after the accident then I can't sleep on my right side and if it happen at any time in my sleep I turn on my right side and if I don't know because I am asleep, then my right hand there is almost paralyzed and it takes a few minutes before it comes back and then another thing, if I put pressure up against and push with it I can't do it. * * * Any time I got to open the valves, I got all the machinery there to take care of and oil the pumps there and got to work the valves back and forth. Well, if I get hold of my hand and pull to me it doesn't bother me but if I go to do the other way, supposed to push the other way, I can't get much power to do that. * * * I don't know * * * when I try to put weight up against my hand, right there, the joint there, what you call the joint, that bone. * * * I don't know, if you want to take my shirt off you can see it, it come this way.

"Q. Take your shirt off and show us, explain to the jury what you want to say? A. Back here, this bone come way down here, come inside right here and any time I put my hand there, all the weight there and I want to push, it come right through, the pain right through, the way I feel myself, I don't get enough power."

In Dallas Consol. Electric St. Railway Company v. Motwiller, 101 Tex. 515, 109 S.W. 918, 921, our Supreme Court said: "It appears that before she was hurt she could and did walk to and from her work, and that since her injuries she has been compelled to ride upon street cars. From their own general knowledge and experience the jury could say that this diminished to some extent the returns from her employment, and we think this evidence was as definite as should be required to show loss of earning power to the extent indicated by it. Evidence is adduced to put the jury in possession of facts from which they can determine the extent of impairment of earning power, and is not intended in itself to establish a fixed measure of damages. When the jury are informed of such a fact as that just stated, they have enough to enable them to allow something upon that score. That they are not so informed as to permit them to allow for the full extent of such loss is no reason for saying that they cannot allow for the part of which they are sufficiently informed."

See also: Texas & P. R. Co. v. Perkins, Tex.Civ.App., 284 S.W. 683, 687; Dallas Ry. & Terminal Co. v. Darden, Tex.Civ. App., 23 S.W.2d 739; South Plains Coaches v. Behringer, Tex.Civ.App., 32 S.W.2d 959; Quanah, A. & P. Ry. Co. v. Eblen, Tex.Civ.App., 87 S.W.2d 540, 544; Miller v. Hooper, Tex.Civ.App., 94 S.W.2d 230; Panama Refining Co. v. Crouch, Tex. Civ.App., 98 S.W.2d 271, affirmed 132 Tex. 608, 124 S.W.2d 988; Merchants Bldg. Corp. v. Adler, Tex.Civ.App., 110 S.W.2d 978; Jackson-Strickland Transp. Co. v. Seyler, Tex.Civ.App., 123 S.W.2d 928, 937.

We give appellants' sixth proposition: "Since the pleading and the evidence raised the issue that the failure of the driver of the other automobile involved in the collision with the taxicab to stop at the stop sign on Irving Street before entering the intersection of that street with Doucette (where the collision occurred) was a new and independent cause of the collision, such issue should have been separately and specifically submitted to the jury in view of defendants' objection to the Court's charge, because it failed to so submit the same, and of their requested special issue No. 5 requesting such submission."

If it be conceded that appellants were entitled on the evidence to an affirmative submission of the issue of "a new and independent cause", the court did not err in refusing to submit issue No. 5: "Do you find from a preponderance of the evidence that the failure of the driver of the other automobile involved in the collision with the taxicab to stop at the stop sign on Irving Street before entering the intersection of that street with Doucette, if you have found that he did so fail, was a new and independent cause of the collision?"

There was no evidence of "a new and independent cause" except as that issue was predicated on the negligence of the driver of the other car. The acts of negligences of the driver of the other car could not constitute "a new and independent cause", unless his negligence was "the sole proximate cause" of the collision. The negligence of the driver of the other car was submitted to the jury and was found not to be "the sole proximate cause". Appellants did not have the right to a second submission of these same acts of negligence as constituting "a new and independent cause". Safeway Stores v. Rutherford, Tex.Civ.App., 101 S.W.2d 1055, 1059, affirmed 130 Tex. 465, 111 S.W.2d 688.

Judgment of the lower court is in all things affirmed.

Judgment affirmed.